Exhibit A

Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
KNOWYOURMEME.COM NETWORK, INC., and
PALISADES CAPITAL, INC.

                    Plaintiff(s),

       -against-

JACOB NIZRI, WE ENDEAVOR LTD, and
LITERALLY MEDIA LTD,

                    Defendant(s).

-------------------------------------------------------------------X

Index No.
Date purchased
Plaintiff(s) designate(s)
NEW YORK
County as the place of trial.
## SUMMONS

The basis of venue is
The Plaintiff's place of business

**Plaintiff(s) reside(s) at** 244 Fifth Avenue, Suite #G290, New York, NY 10001
County of New York

## TO THE ABOVE NAMED DEFENDANT(s)

       **YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve a copy of your answer, or if the Complaint is not served with this Summons, to serve a notice of appearance, on the Plaintiffs' Attorneys within twenty (20) days after the service of this Summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this Summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: October 7, 2020

Defendant's Address:
61 Greenpoint Ave. Suite 101 Brooklyn, New York 11222.

By: _____//s//Jeffrey Davis_____
Attorneys for the Plaintiffs
600 Mamaroneck Ave, 4th Floor
Harrison, New York 10528
Tel: 914 586 3529

1

SUPREME COURT OF THE STATE NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------X
KNOWYOURMEME.COM NETWORK, INC., and
PALISADES CAPITAL, INC.

                    Plaintiffs,

-against-                                  VERIFIED COMPLAINT

JACOB NIZRI, WE ENDEAVOR LTD, and
LITERALLY MEDIA LTD,

                    Defendants.
--------------------------------------------------------------------X

        Plaintiffs Knowyourmeme.com Network, Inc. ("Plaintiff") ("KYN") and Palisasdes Capital, Inc. (Plaintiff") by its attorneys Davis & Associates. P.C. for their Complaint against Defendants Jacob Nizri ("Nizri"), We Endeavor Ltd, ("WEE") and Literally Media LTD ("LM") (collectively, "Defendants"), alleges as follows:

<hr>

## PARTIES

1. Plaintiff KNOWYOURMEME.COM NETWORK, INC. ("KYN") is a Delaware corporation with its principal place of business in New York City, New York.

2. PALISADES CAPITAL, INC. ("PCI") is an Arkansas corporation with its principal place of business in New York City, New York.

3. Defendant JACOB NIZRI ("NIZRI) is a resident of New York

4. Defendant WE ENDEAVOR LTD. ("WEE") also doing business as We Endeavor Media Group is an Israeli corporation doing business in New York. At all times hereinafter mentioned, WEE regularly conducted business activities in the City, County and State of New York and continues to maintain offices at 61 Greenpoint Ave. Suite 101 Brooklyn, New York 11222.

5. Defendant LITERALLY MEDIA LTD. ("LM") is an Israeli corporation doing business in New York, with the majority of its stock owned by WEE. At all times LM regularly conducted business

2

activities in the City, County and State of New York and continues to maintain offices at 61

Greenpoint Ave. Suite 101 Brooklyn, New York 11222.

## JURISDICTION AND VENUE

6.    The Court has jurisdiction over Defendants pursuant to CPLR §§ 301 and 302(a) because

the Defendants have their principal place of business and/or regularly transaction business

in the State of New York, Defendants have committed tortious acts within the State of New

York or outside New York, causing injury in this State and resulting in the claims herein.

7.    Venue is proper under CPLR §§ 503(a) because New York County is the county in which

one of the parties resided when it was commenced, the county in which a substantial part

of the events or omissions giving rise to the claims occurred, Defendants maintain offices in

this county and Plaintiffs maintain an office in this county.

## BACKGROUND

8.    Prior to the commencement of this lawsuit Liveleak Global Internet Inc. (a non-party to this

action has assigned to KYN all of its related rights and benefits under the four agreements and two

promissory notes executed with Defendants, all of their rights, title and interest in and to any and

all legal claims including any action or claim of any nature whatsoever, whether against the named

Defendants or any other party, arising out of or in connection with the transferred claims.  KYN,

Liveleak Global Internet Inc., shall for the purposes of this Complaint be collectively referred to

herein as the Plaintiff.

9.    Prior to the commencement of this lawsuit, Broadwebasia, Inc. has assigned to PCI all of its

related rights and benefits under a February 2019 merger agreement and all of its rights and

benefits under such agreement, including all of its rights, title, and interest in and to any and all

legal claims including any action or claim of any nature whatsoever, whether against the named

Defendants or any other party, arising out of or in connection with the transferred claims.

10.  After executing a non-disclosure agreement in mid-2018, Plaintiff conducted due diligence and

3

reviewed Defendant LM's past financials and future forecasts. Plaintiff's CEO met with Defendant LM's CEO in New York City in September 2018 to discuss the necessity that the anticipated purchase be structured as a merger to be most favorable for investors providing the cash component of the purchase price. Defendant LM was amenable to be acquired through a merger structure, also important to Plaintiff for its significant economic and tax advantages as compared to a share purchase agreement. On or about September 18, 2018, Plaintiff KYN and Defendant LM executed an agreement (hereinafter referred to as the "September Purchase Agreement"). Section 1 provided for the acquisition to "be structured as a merger (the "Merger") of an acquisition subsidiary of" Plaintiff "with and into" LM. [1] Defendant LM also agreed its "significant shareholders including the Company's executive officers and Directors" which includes Defendant WEE, would sign "support agreements" to "vote in favor of the Merger".

10. Defendant LM was also informed its acquisition structured as a merger with Plaintiff's acquisition subsidiary facilitated becoming publicly traded. As such Paragraph 1, subsection (ii) provided a portion of the consideration would "be paid in stock of" Plaintiff "or the public entity" Plaintiff "completes a concurrent merger with ('Public Entity')."

11. On or about November 15, 2018, at a New York City meeting, LM majority stockholder Defendant WEE and its CEO Defendant Nizri, confirmed Defendants had no issues closing an acquisition thru Plaintiff KYN's Delaware subsidiary merger with Defendant LM as the September agreement described. Also at the meeting, Broadwebasia's Chairman expressed that as a public company, a lengthy process was involved for approval from all of its constituents and explained it would have to terminate ongoing discussions with other interested companies to instead complete a transaction to acquire Plaintiff KYN concurrently with its acquisition of Defendant LM by way of a merger. Defendants WEE and Nizri stated as the LM majority stockholder, they were beneficiaries of the majority of stock consideration to be received under the September agreement, and approved the Broadwebasia

---

[1] As explicitly stated in section 1. A copy of the September Purchase Agreement is annexed hereto and made a part hereof as Exhibit "1".

4

transaction's merging of Defendant LM and Plaintiff KYN to become part of a new amalgamated public company, because they preferred getting public stock over private stock.

12. In November 2018, an amendment increased the purchase price by $150,000 (A copy of the hereinafter referred to "November Amended Purchase Agreement" is annexed hereto and made a part hereof as Exhibit "2"), and modified Section 6, removing a requirement an investment bank be retained as at the November meeting, Plaintiff KYN had demonstrated financing had been sourced. Defendants again agreed in Section 1, "this transaction would be structured as a merger (the "Merger") of an acquisition subsidiary of" Plaintiff "with and into" LM. Further assenting to a merger thru Section 6 "The completion of the Merger shall be contingent upon the Buyer's completion of due diligence to its satisfaction."

13. In December, Defendant LM confirmed its readiness to proceed with the merger acquisition structure and alerted Plaintiff its 2018 financial performance would be significantly greater than forecast but would not be able to provide final results until January. On January 7, 2019, the parties executed an agreement, increasing the purchase price by $500,000 (A copy of the "January Second Amended Purchase Agreement" is annexed hereto and made a part hereof as Exhibit "3") and moved the closing deadline to February 28, 2019 so Defendant LM's 2018 financials were available for the private placement investors.

14. Defendants again agreed in Section 1, "this transaction would be structured as a merger (the "Merger") of an acquisition subsidiary of" Plaintiff "with and into" LM, affirming the common goal thru Section 6 "The completion of the Merger" and assenting the closing was "contingent upon the Buyer's completion of due diligence to its satisfaction."

15. By early February 2019 all the material points requiring negotiation has been resolved and the parties executed what was a fully binding preliminary agreement, increasing the purchase price by $100,000, and moving the closing deadline to March 21, 2019 (A copy is annexed hereto and made a part hereof as Exhibit "3")   Defendants agreed in Section 1, "this transaction would be structured as a merger (the "Merger") of an acquisition subsidiary of" Plaintiff "with and into" LM, and again assented to a

5

merger structure thru Section 6 "The completion of the Merger shall be contingent upon the Buyer's completion of due diligence to its satisfaction.". The parties agreed to later create a "definitive purchase agreement" to memorialize and "to include the terms and conditions set forth in this" agreement, and would agree upon "other representations, warranties, conditions, covenants, indemnities" and a simple administrative process "to adjust the Aggregate Purchase Price to reflect a higher. Or lower, working capital of the Company at the Closing." Prior to signing the February 2019 agreement, on a conference call, Defendant LM's CEO stated full support of the merger acquisition structure, unchanged from the previous three agreements, and agreed to proceed.

16.     On March 7, 2019, Defendant LM received both an amended promissory note it had demanded and a draft purchase agreement, consistent with the four executed agreements, for LM to be acquired thru a merger with Plaintiff KYN's Delaware acquisition subsidiary.

17.     On March 12, 2019, after 7 months of detailed negotiations and due diligence, Defendant LM by email reneged on its agreement to be acquired thru merging with the Plaintiff's subsidiary stating, "one very important note on any possible agreement is that it will need to be a Share Purchase Agreement, and not a merger." A share purchase would be a material change to the four previous agreements, resulting in a significantly more expensive and far riskier acquisition for Plaintiff KYN.  Defendant LM defended its material change to what it had agreed to under four agreements thru a March 14, 2019, email stating, "Under Israeli law, an Israeli company cannot execute a merger with a Delaware entity."

18.   Shortly after receipt of Defendant's March 14, 2019 email, Plaintiff KYN sent a breach notice then acting in good faith attempted to resolve the issue thru delivering a new draft merger agreement on March 18th, allowing LM to be acquired thru merging with an EU entity instead of a Delaware entity. However, Defendant LM by March 19th email again refused to close the acquisition by way of merger.[2]

---

[2] "I checked with legal. An Israeli company can merge only with other Israeli companies. So, any plan based on a merger"…."with a non-Israeli corporation isn't possible." (March 19, 2019 email from CEO of Literally Media LTD)

6

19.   Plaintiff KYN next offered to form an Israeli entity to merge with Defendant LM, eliminating the issue of violating Israeli law that LM claimed prevented its performance under the four agreements. Defendant LM in bad faith rejected the offer to modify the agreement to a merger with Plaintiff's Israeli incorporated acquisition subsidiary claiming its desire to avoid the need to "meet specific statutory requirements" and insisted the only way to complete the acquisition was by eliminating the merger and changing to a structure consisting of "a purchase of the shares of" LM.

20.   Later despite Plaintiff's attorney sending LM a demand notice of its intent to pursue legal recourse unless agreeing to meet to attempt to negotiate a resolution of the dispute, LM did not respond.

21.   Defendants were part of a common scheme and a conspiracy which connected the actions and acts of the individual defendants with fraudulent inducement, fraudulent misrepresentation, fraudulent concealment, and promissory fraud, each of which is an actionable, underlying tort. There was an understanding among Defendants they would continue to mislead Plaintiff by fraudulently concealing that Defendant LM was not able to perform under the four agreements it executed.  Defendants had no intention of honoring LM's obligation to be acquired by merger. Instead there was an agreement among the Defendants that after Plaintiff provided a draft merger agreement they would demand the acquisition be changed to a stock purchase which was financially more favorable to the Defendants.

22.   Defendants WEE and Nizri acted in concert to sabotage the merger transaction structure required under the four agreements, always intending to direct Defendant LM to disregard its contractual obligations and force Plaintiff KYN to change the acquisition to a stock purchase agreement or abscond with the $125,000 promissory note issued to Defendant LM. Aforementioned parties agreed to take overt acts including: Defendant WEE determined to scuttle or terminate KYN's right to acquire Defendant LM thru a merger agreement by causing Defendant LM (i) not to perform its obligation under the four agreements, including filing the required statutory paperwork due under Israeli law in advance of signing or immediately after signing the approved merger agreement. (ii) making omissions of fact including that

7

Defendant LM could not perform the merger with Plaintiff LM's U.S. subsidiary it had obligated itself to under the four acquisition agreements without being in violation of Israeli law. Defendants WEE and its CEO Nizri furthered the conspiracy by not correcting the aforementioned omission when meeting with Plaintiff KYN's CEO in New York City in November 2018 while actively misrepresenting that Defendant LM could and would close the acquisition by merging with Plaintiff KYN's Delaware incorporated acquisition subsidiary. Further, Defendants WEE and Nizri planned and directed the March 12, 2019 notice Defendant LM's CEO emailed to Plaintiff LM refusing to review or approve the draft merger agreement and demanding instead that the Plaintiff must agree to switch the acquisition structure to a "share purchase".

<u>FIRST CAUSE OF ACTION</u>

Breach of Contract

23.     Plaintiff repeats and re-alleges every allegation set forth in previous paragraphs as if fully set forth herein.

24.     Plaintiff has performed all conditions, covenants, and promises required to be performed in accordance with the terms of the four agreements alleged herein and provided consideration thru its CEO issuing a $125,000 Promissory Note and an amended note Defendant demanded for entering the February 2019 fully binding preliminary agreement. Plaintiff's ability to perform or get the benefits under the agreement was frustrated by Defendants acting in bad faith, including not explaining their failure of waiting until after signing four agreements to consult with a legal advisor to determine if LM could legally comply with the merger acquisition structure it had obligated itself to, and not informing the Plaintiff the transaction structure Defendants had agreed to violated Israeli law until seven months after executing the September 2018 Agreement. Defendant LM's conduct was a willful rendering of imperfect performance by waiting until after Plaintiff KYN had spent the time, resources, and money drafting a merger purchase agreement to first inform the Plaintiff it would not honor its obligation under the agreement. Defendant LM knew that at the time it rejected the previously agreed to merger agreement, on March 14, 2019, only seven days remained before the parties agreement automatically terminated, thus

8

Plaintiff lacked enough time remaining to accomplish the new tasks required to be performed as a result of Defendant's new demand.

25. Defendant LM breached Sections 1, 2, 3, 6,11 of all four agreements. Each breach was material because they substantially defeated the object of the agreement which was to allow Plaintiff to complete an acquisition by merging its's "acquisition subsidiary" with and into Defendant LM. Section 1 requiring "this transaction would be structured as a merger (the "Merger")" was breached when Defendant LM refused to review or accept the merger agreement after receiving it on March 7, 2019, and thru Defendant LM's March 12, 2019 email unambiguously rejecting the closing of the acquisition by way of merger while demanding a materially different new more favorable Share Purchase structure to benefit Defendants. Defendants also breached Section 2 of the four agreements which states,

> "we will expect certain significant shareholders, including the Company's executive officers and directors, to sign appropriate support agreements (providing that they will vote in favor of the Merger) contemporaneously with the execution of the Purchase Agreement."

when after receiving the merger agreement on March 7, 2019, Defendants failed to provide support agreements from any "executive officers" or "directors" or "significant shareholders" as required. Even after informing Plaintiffs "any possible agreement"…"will need to be a Share Purchase Agreement, and not a merger.", Defendants still failed to provide support agreements, even ones for a "share purchase".

26. Section 6 stated "The completion of the Merger shall be contingent upon the Buyer's completion of due diligence to its satisfaction" which Plaintiff KYN completed followed by delivering a "purchase agreement" to Defendant effecting "completion of the Merger". Defendant LM breached section 6 when after receiving such agreement on March 7th, it failed and refused to make any good faith effort or attempt to have such agreement "approved" including thru calling a shareholder vote or Board of Director meeting and instead replied by email on March 12, 2019 reneging on the agreements it executed, informing Plaintiff that Defendant would not seek to have the purchase agreement approved and would only review "any possible agreement" if it was a "Share Purchase Agreement, and not a merger."

27. Defendants knew upon executing the four agreements, the material representations made in

9

Case 1:20-cv-09869-GBD Document 1-1 Filed 11/23/20 Page 11 of 29

Section 6 were false, including "The completion of the Merger shall be contingent upon the Buyer's completion of due diligence to its satisfaction." Defendants breached Section 6 because the opportunity for Plaintiff's "completion of the Merger" acquiring Defendant LM was not contingent upon Plaintiff's "completion of due diligence to its satisfaction", but in fact contingent on an Israeli Court's approval after due diligence satisfying the Court that the transaction complied with Israeli Company Law Section 350 & 351.[3] Defendants were unable to perform or deliver that which they obligated themselves to under Section 6, and had misrepresented thru omission the material facts (i) The only method for an Israeli entity to be acquired thru a merger and not violate Israeli law was for such merger to be with another Israeli entity. Defendant LM as an Israeli entity was unable to complete a merger with a non-Israeli entity without violating Israel's Company Law Section 350 & 351. (ii) A merger between two Israeli companies was subject to Israel's Company Law Section 350 "Authority to make compromise or arrangement" including 350(a) requiring an "application by the company" filed with the Israeli Court before closing such a merger which is a type of "compromise or arrangement" (iii) Closing the acquisition by a merger between Plaintiff KYN's Israeli subsidiary and Defendant LM would be subject to a delay for an undeterminable period of time after filing the Court "application", and would further be dependent on if creditors or shareholders "file objections" which would "freeze" the consummation and be subject to further review by the Court (iv) The Israeli Court has the right to order changes to the structure of the transaction (v) Section 351(a) 'Structure change and merger' required Defendant to prove to the Court it had complied with Section 350 and 351(a) (vi) If a company violated Section 351 "it and every officer in it who approved or permitted the violation shall be liable to a fine as said in section 61(c) of the Penal Law 5737-1977 for every day on which the violation continues." (vii) Before a merger could be closed, Plaintiff KYN would need to retain an Israeli lawyer to submit information and appear in front of the Israeli Court for any hearings (viii) The merging companies filing have no control over the duration of time passing before the Court's decision.

28. Defendant LM's March 14th email notifying Plaintiff it would not close an acquisition by way of

---

[3] A copy of Company Law Section 350 & 350 are attached as Exhibit "4".

merger, effectively terminated the September 2018 and February 2019 Agreements, breaching Section 11 because Defendant lacked the right to stop performing its obligations owed under such agreements before the Section 11 listed termination date of "March 21, 2019".

29.  Defendant LM breached Section 5 'Seller's Covenants' stating "During the period this Letter is in effect, Seller will conduct LM's business in the ordinary course and will not undertake any activity or transaction that would significantly reduce the value of LM's business or assets." thru the activity in March 2019 attempting to modify the acquisition to a stock purchase agreement which would prevent Plaintiff KYN from closing the acquisition thru a merger of an acquisition subsidiary of Plaintiff with and into LM.

30.  Such activity would significantly reduce the value of LM's business and assets because KYN would lose the benefit of the bargain, specifically that the Plaintiff, a Delaware corporation could acquire the Defendant by merging its acquisition subsidiary into the Defendant's legal entity thru a merger agreement, and therefore operating profits post-acquisition would flow from one Delaware corporation to another, without requiring additional taxes and other costs incurred from operating an Israeli entity. After Defendants rejected Plaintiff KYN's offer to modify the acquisition merging with a KYN formed subsidiary which was an Israeli entity, such activity significantly reduced the value of LM's business or assets because such rejection included a demand for the acquisition to be restructured to a stock purchase agreement. If KYN proceeded to consummate a stock purchase acquisition of LM, it would lose the statutory benefits, protections, and security offered by Israel and only available by way of consummating an acquisition of an Israeli entity thru a merger as outlined by Company Law Section 350,351.

31. Therefore, Defendant LM's decision to "undertake" the "activity" of refusing any type of merger acquisition significantly reduced the value of its business or assets because proceeding thru a stock purchase agreement would prevent KYN from receiving an Israeli Court's protections against undisclosed creditors and other liabilities that existed. Without the benefit of an Israeli Court's protections, only available for companies that acquired Israeli entities thru merger acquisitions, which required a statutory filing made to the Israeli Court, such activity or transaction would significantly reduce the value of LM's assets by materially increasing post- acquisition liability including thru forcing KYN to agree to be 100% responsible to absorb undisclosed debts and liabilities of LM and risk for KYM.

11

32.    Each time Defendant LM executed an agreement, its duly authorized representative Defendants WEE or Nizri signed the document. Section 13 required the agreement "may be amended, supplemented or otherwise modified only in a writing signed by duly authorized representatives of each Party.", and was breached when Defendant LM improperly sought to amend or modify the September 2018 and February 2019 fully binding preliminary agreement to a share purchase agreement despite neither of the CEO's March 14th and 19th email communications being "a writing signed by duly authorized representatives" of LM. Further, Defendant LM provided no such writing of any kind signed by a "duly authorized representative" prior to the agreement's March 21st automatic termination date. As a direct and proximate result of Defendants' breaches as aforesaid, Plaintiff has suffered monetary damages, and is now entitled to recover damages suffered.

33.    Plaintiff KYN was damaged thru breach of Section 3 requiring Defendant LM "to negotiate in good faith, for the period" extended to March 21, 2019 by the February agreement, as well as the implied covenant of good faith and fair dealing thru unfairly interfering with Plaintiff KYN's right to receive the benefit of the agreed stipulation for an acquisition "structured as a merger (the "Merger") of an acquisition subsidiary of" Plaintiff "with and into" LM.

34.    Section 3 was breached when Defendant LM made no effort to negotiate the draft purchase agreement between March 7th the date of its receipt and March 12th when the Defendant informed KYN by email it was reneging on the agreement to complete the transaction by way of a merger. Defendant further breached the implied covenant of good faith and fair dealing when after receiving the March 7th draft purchase agreement, it did not provide any proposed revisions failing to fulfill Section 3 obligations to negotiate in good faith the "terms and conditions" set forth in the four agreements including "such other representation, warranties, conditions, covenants, indemnities." or confirm acceptance of any covenants included in the received purchase agreement.   Defendants further acted in bad faith by not fulfilling its obligation to review the March 18th revised merger purchase agreement before informing Plaintiff "a Share Purchase" was the only "possible agreement" they would consider reviewing.

35.    Defendants' undermined Plaintiff's reasonable expectations by creating new burdens making performance too difficult including forcing Plaintiff to (i) notify the private placement investors

12

that there had been a material change to the structure of the LM acquisition which made the deal worse for Plaintiff KYN on an economic basis with new and unexpected risks and liabilities incurred as a result of closing the acquisition (iii) conduct research into the tax and other ramifications as a result of acquiring LM thru a purchase of its shares instead of a merger. (iv) notify the public company, Broadwebasia and inform them that there had been a material change to the structure of the LM acquisition making the deal significantly worse for Broadwebasia (v) Enter into discussions, negotiate revisions, and enter into a new agreement with Broadwebasia to resolve Plaintiff KYN's breach of the agreement it had reached to complete a reverse merger with Broadwebasia. (vi) Create and draft a new agreement by way of a stock instead of a merger purchase. (vii) Negotiate the new stock purchase agreement with over twelve stockholders of Defendant LM and get each of them to approve the terms of the acquisition of LM.

36.     Defendants acted arbitrarily and irrationally in refusing to proceed with any type of acquisition thru a merger structure even after Plaintiff KYN agreed to change the structure for a third time to resolve the "Israeli law" issue the March 14th email claimed prevented Defendant's ability to "execute a merger". Defendants' refusal to negotiate with fair dealing or proceed in good faith, intentionally killing the deal and as a result damaged Plaintiffs.

37.     As a direct and proximate result of Defendants' breaches including breaching Section 3 and the implied covenant of good faith and fair dealing as aforesaid, Plaintiff has suffered significant damages, including injury thru losing the contractual right to Purchase Defendant LM in a tax favorable acquisition structure merging LM with a Delaware incorporated subsidiary, preventing completion of a $20,000,000 private placement financing, causing Plaintiff to breach two other acquisition agreements on favorable terms, and a binding agreement to merge concurrently with public company Broadwebasia. Further, the Defendant's breach caused significant indirect and incidental damages for Plaintiff KYN from its 30% ownership stake in one of the additional acquisition target companies and the decrease in asset value which occurred when such company after not receiving the planned additional capital promised by the Plaintiff, lacked the resources necessary to deal with and resolve an unexpected crisis that arose in March 2019 shortly after the Defendant's breach. Without such promised resources, the value of KYN's 30% ownership stake was damaged and diminished in value significantly.

13

## SECOND CAUSE OF ACTION

### Specific Performance

38. Plaintiff repeats and re-alleges every allegation set forth in previous paragraphs as if fully set forth herein.

39. Plaintiff seeks specific performance in that this Court should require Defendant to conclude the transaction contemplated by the Collective Agreements.

40. There is no other adequate remedy available

## THIRD CAUSE OF ACTION

### Fraudulent Inducement or Fraudulent Misrepresentation

41. Plaintiff repeats and re-alleges every allegation set forth in previous paragraphs as if fully set forth herein.

42.    In the four agreements, Defendants engaged in promissory fraud thru misrepresentations and false representations of present fact including (i) That an Israeli entity could be acquired thru merging with a U.S. entity without violating Israeli law (ii) That Defendant LM was not bound under or required to comply with Israeli corporate law. (iii) Omission of fact the single legal permissible method for Defendant LM to be acquired by merger required and was subject to statutory approval by an Israeli Court (iii) Omission of the fact that under Israeli law, Defendant LM could only legally merge with another Israeli entity, an Israeli Court must approve all merger transactions involving Israeli corporations, both Israeli entities must make a joint statutory application filed with an Israeli Court seeking merger approval, the length of time for Court approval was not fixed, and even if approval was received the Court could also order changes to the transaction structure or terms.

43. The Defendant's misrepresentations thru omission while negotiating and executing four agreements were acts of promissory fraud because Defendants had knowledge of Israeli statutory requirements restricting mergers, thus promised but did not plan to execute a merger purchase agreement

14

or allow Defendant LM to be acquired by way of merger, because they knew it was not legal for an Israeli entity to consummate an acquisition thru the merger structure described in such agreements. Defendants intent in making the misrepresentations were that they should be acted upon in the manner reasonably contemplated, including Plaintiff KYN executing the September 2018 agreement. Plaintiff KYN and its CEO relying on such false promises and misrepresentations was also induced to acquiesce to the Defendants' $125,000 promissory note payment demand as consideration to enter the agreement. Defendants planned once the draft merger agreement was provided, they would disclose the fraudulently concealed facts, correct the omissions that made up the material misrepresentations, and demand the acquisition be modified to a stock purchase, benefitting Defendants at expense of Plaintiffs. Defendants hoped Plaintiffs, the investors providing the financing, the other companies KYN had signed acquisition agreements with, and the public company that agreed to issue public stock to LM, would all be willing to modify the deal into a stock purchase acquisition, despite requiring Plaintiff KYN to pay a double tax on all future income and creating significantly more risk of undisclosed liabilities being absorbed by Plaintiff.

44. Further supporting fraudulent misrepresentation was that even when they finally disclosed the fact that Defendant LM would not and could not perform under the four executed agreements without violating Israeli law they failed to disclose the complete information necessary to clarify the false impression made by the Defendants providing incomplete information. In the March 12th email, when first rejecting and reneging on its obligation to complete the acquisition thru a merger agreement, Defendant LM provided no explanation. After Plaintiff requested an explanation, Defendant LM replied "Under Israeli law, an Israeli company cannot execute a merger with a Delaware entity.", a partial truth and ambiguous statements that required additional disclosure to avoid being misleading and to clearify the false impression made by the incomplete information, specifically the fact that under Israeli law, an Israeli entity is only permitted to merge with another Israeli entity.  This caused Plaintiff KYN further harm by spending more time and resources preparing a new draft purchase agreement sent to Defendant LM on March 18th which modified the acquisition to allow it to be completed by Defendant LM merging with Plaintiff's EU incorporated subsidiary. Only after receiving the second draft merger agreement, did Defendants disclose the full truth of aforementioned legal limitations.

15

45.  At all times, Defendants knew their fraudulent misrepresentations were not true, and LM could not perform as it represented under the four agreements' explicit terms, including regarding the merger "of an acquisition subsidiary" of the purchaser  "with and into" LM. Majority stockholder, Defendant WEE was aware LM representations it could be acquired thru a merger with a non-Israeli company was false. Defendant WEE was aware of the omission in all four agreements that an Israeli entity acquired by another Israeli entity thru a merger required approval from an Israeli Court,  an obligation for both parties to prepare information filed with the Court, and closing of such a merger was subject to an undeterminable future date when such Court provided a ruling approving or rejecting the merger.

46. The Defendants knew they could not perform the transaction under the terms of the four agreements they executed without violating Israeli law, therefore they knew the representations they were making in each of such agreements were false.

47. For several months Defendants LM, WEE, and Nizri represented to Plaintiff KYN their intention to close the deal between the parties, then failed to take the necessary steps required to finalize the sale when they had the ability to do so as previously represented. Defendants knew Plaintiff had another acquisition it planned to consummate using funds from outside investors, and that Plaintiff planned to use funds from the same investors to close the acquisition of Defendant LM. Defendants determined to fraudulently conceal knowledge of the Israeli statutory requirements and restrictions while misrepresenting their knowledge of these facts by agreeing for Defendant LM to be acquired under the terms of the September 2018 agreement and later the February 2019 agreement which Defendants knew they could not perform under without violating Israeli law. Plaintiff was injured when on March 12, 2019, just a few days after providing a draft merger agreement, Defendant informed Plaintiff it was unwilling to proceed with being acquired thru the agreed merger structure as outlined in the parties four executed agreements, forcing a delay and ultimately destroying the Plaintiff's efforts to close a $20,000,000 private placement and the other acquisitions it had committed to acquire from third parties. Further, the aforementioned delay caused the Plaintiff to breach other thirdparty acquisition agreements it had entered into.

48.  Defendants made the aforementioned misrepresentations and omissions intending to induce reliance because Defendants were given the opportunity to review, revise, and retract the

16

misrepresentations in the agreements before they executed them., the misrepresentation was made multiple times, and Defendants repeated and continued to make the same misrepresentations in three more agreements they executed or approved over seven months. Defendants knew Plaintiff would rely on their misrepresentations because they knew Plaintiff was an American company with no Israeli executives and its CEO a native born U.S. citizen had no experience acquiring or selling Israeli companies by merger or otherwise and would absolutely rely on Defendants' representations regarding what type of acquisition structure would be legal or permissible for an Israeli entity. It was reasonable for Plaintiff KYN to rely on representations of Defendants regarding Israeli corporate law because it was not just one source, but two Israeli corporations and two Israeli CEOs making the misrepresentations. Defendants LM and WEE were Israeli entities with experienced Israeli entrepreneur CEOs who previously worked at or owned Israeli companies subsequently acquired, and Defendant WEE had previously sold a portfolio company to a public company in 2014, making Plaintiff's reliance even more reasonable. Defendant WEE CEO Defendant Nizri was also a director or investor in several other Israeli companies and had completed several prior Israeli acquisitions.[4] Defendant LM's sophisticated CEO born and with significant work experience in Israel was aware the aforementioned misrepresentations were false. Before executing the September 2018 agreement, Defendant LM required approval of majority stockholder, Defendant WEE. Defendant WEE CEO Defendant Nizri was aware the aforementioned misrepresentations were false. Reliance existed because Plaintiff KYN used such information in deciding to enter into the agreements, issue a promissory note to Defendant LM, and to increase the purchase price in the November 2018, January 2019, and February 2019 agreements, ultimately suffering material damages as a result.

49. Plaintiffs were injured when on March 19, 2019, Defendant LM informed Plaintiff it was unwilling to proceed with an acquisition by merger and rejected the offer to modify the agreement allowing LM to merge with Plaintiff's Israeli acquisition subsidiary, further causing loss of commitment of the private

---

[4] whose website describes its Founder and CEO Defendant Nizri's experience "he's been part of Dau-Up, a marketing powerhouse for gaming companies that was acquired by XLmedia (on the London Stock Exchange) in 2014. He acted as a board member at eXelate that was acquired by Nielsen. He was also an investor at Corr.BL (acquired by Moonbow) Positive Mobile (acquired by Ynet) and Convert Media (acquired by Taboola)"

17

placement investors after they learned the acquisition would change to a stock purchase agreement instead of a merger.  The private placement investors were also concerned a stock purchase acquisition was risker from a liability standpoint. If Defendants had agreed to modify the acquisition to a merger between two Israeli companies, then an Israeli Court would ensure thru its statutory process that the company Plaintiff KYN was acquiring did not include hidden or undisclosed liabilities. Since Defendants refused to proceed thru a modified merger with an Israeli subsidiary, the private placement investors believed Defendants demand to change to a stock purchase was to avoid disclosure of additional liabilities, instead transferring or effecting a fraudulent conveyance of these to Plaintiff.

50.  Defendant LM had a distinct legal duty as a counter party to the convertible promissory note issued by Plaintiff's CEO after the September 2018 agreement was executed, making the fraudulent misrepresentations collateral to such agreement. Defendants' actions were fraudulent in that they misrepresented and concealed the fact Defendant LM never planned to proceed with consummating a merger as described in the four agreements. Plaintiff KYN has been further harmed by the distraction and duress of its CEO personally suffering a significant economic loss from paying $125,000 to LM as consideration to enter the September 2018 agreement, not recoverable unless the Court grants recission.

51.   The transaction became "inherently unfair" after the November 2018 New York City meeting between Plaintiff's CEO, Defendant LM majority shareholder Defendant WEE, and Defendant Nizri. Thereupon a "duty to disclose" had risen under the Special Facts doctrine. Since majority stockholder Defendant WEE had superior knowledge of the essential facts regarding Israeli legal restrictions on any acquisition of an Israeli company by way of merger, and by not disclosing such essential facts during the New York City meeting it rendered the transaction inherently unfair.  Instead of making necessary disclosure to fix the inherently unfair rendered September 2018 agreement, Defendants continued the misrepresentations and omissions while executing three subsequent agreements each increasing the purchase price. Defendants fraudulently concealed knowledge of Israeli Company Law 350 & 351 statutory requirements until purportedly discovering on March 12, 2019, a few days after receiving the merger purchase agreement, it was illegal for Defendants to consummate the very type transaction it had obligated itself four times over seven months.

18

52. Defendants failed to act in a timely fashion informing Plaintiff KYN that because Defendant LM was an Israeli company it could not legally merge with non-Israeli corporations, could not comply with Section 1 or 6 of the four agreements without violating Israeli corporation law, any **Israeli Company Law 350 & 351 compliant** merger would require Israeli Court approval thru a process not possible to be completed prior to the agreement's Section 11 automatic termination date, and also its majority stockholder, Defendant WEE, would not agree to sell Defendant LM thru an **Israeli Company Law 350 & 351 compliant** merger or approve such an agreement.

53.    At a November 2018 New York City meeting, Defendant Nizri, CEO of LM majority shareholder Defendant WEE, represented fact Defendants approved of and supported the transaction and no issues prevented Defendant LM from proceeding to close the transaction thru merger agreement as stated in the September 2018 agreement. **Plaintiffs reasonably relied upon such representations** and as a result of their misrepresentations breached other agreements with 3rd parties contingent on Defendants honoring their obligation to be acquired by way of merger, **suffering significant damages as a result of such misrepresentations and are now entitled to recover damages.**

<u>FOURTH CAUSE OF ACTION</u>

Negligent Misrepresentation

54. Plaintiff repeats and re-alleges every allegation set forth in previous paragraphs as if fully set forth herein.

55. Defendants knew the information supplied in the representations was desired by Plaintiffs for a serious purpose, that of completing an acquisition, and had a duty under Section 3 to act in good faith, including providing correct information, knowing Plaintiffs were relying on the accuracy of Defendants' representations in all four executed agreements, intended to rely and act on such representations, and reasonably relied on them to their detriment.  Instead Defendants failed to correct omissions such as Defendant LM's legal requirement to obtain an Israeli Court's consent to consummate a merger and  made

19

misrepresentations permitting Plaintiff to inaccurately represent to the private placement investors that

Defendant LM would be acquired by way of executing a merger agreement including that Defendant LM

shareholders, executives, and directors supported the acquisition of LM by way of a merger, and that LM

planned and was able to close the acquisition thru a merger agreement as described in the September 2018

Agreement and later the January 2019 and February 2019 Agreements,. Defendants should have known

Defendant LM made representations in all four agreements which were false and incorrect, including that

its majority stockholder Defendant WEE had agreed to sell LM thru a merger transaction and LM an

Israeli legal entity was able to merge with a non-Israeli legal entity without violating Israeli law. Each

Defendant acted with reckless disregard of Plaintiffs' rights by failing to take reasonable care to ensure the

aforementioned statements were accurate when the four agreements containing the misrepresented

statements were executed and further by failing to correct them for seven months.

56. Plaintiffs reasonably relied upon Defendant representations and suffered significant damages as a

result of such negligent misrepresentations and are entitled to recover damages.

<u>FIFTH CAUSE OF ACTION</u>

Interference With Contractual Relationship

57.    Plaintiff repeats and re-alleges every allegation set forth in previous paragraphs as if fully

set forth herein.

58.    Based on the assurances and commitments given by Defendants at the November 2018

New York City meeting, Plaintiff and Broadwebasia entered into a binding merger agreement, closing

subject to completion of certain future events including Plaintiff KYN acquiring Defendant LM thru

merger of KYN's Delaware incorporated acquisition subsidiary with and into LM. Plaintiff had a valid

enforceable contract with Defendant LM which Defendant WEE and its CEO Defendant Nizri were

aware of no later than November 2018 when they met with Plaintiff's CEO in New York City.

Defendants WEE and Nizri intentionally procured LM's breach of the contract thru directing the CEO of

20

Defendant LM to refuse (i) to proceed with being acquired thru a merger agreement even after Plaintiff

offered to modify the structure for an Israeli acquisition subsidiary corporation to be merged with

Defendant LM, resolving "Israeli law" issue claimed in Defendant LM's March 14th email prevented LM

from proceeding to "execute a merger". (ii) to negotiate in good faith a definitive purchase agreement (iii)

to provide any "proposed revisions" fulfilling its Section 3 obligations to negotiate in good faith the "terms

and conditions" set forth in the original 2018 agreement "and such other representation, warranties,

conditions, covenants, indemnities, and other terms."

59.    After Defendants WEE and Nizri instructed Defendant LM to take the aforementioned

actions, it complied and breached the four agreements it was a party to as previously described herein.

60.    Plaintiff KYN has suffered significant damages as a result of the aforementioned

interference by Defendant WEE and Defendant Nizri including causing Plaintiff KYN to not be able to

timely proceed with the acquisition of Defendant LM in March 2019, to be unable to raise at least $20

million dollars in outside financing. to be unable to complete its planned concurrent acquisition of an EU

internet company and a Silicon Valley technology company. Further damages were incurred because

Plaintiff KYN was not able to fulfill a 3rd party agreement to inject working capital into the EU internet

company which Plaintiff KYN owns 30% of and which was subsequently unable to fund its planned

resources to support its large customer service and compliance needs ahead of an unexpected crisis it

lacked resources to deal with at the end of March 2019 and which significantly damaged such company.[5]

61.    Broadwebasia, Inc. had a valid enforceable contract to complete a merger with either

Plaintiff KYN or its Delaware acquisition subsidiary upon acquiring Defendant LM.  Defendants WEE,

---

[5]This resulted in such EU company being under resourced later in March 2019 when the large website it owns and operates failed to adequately and timely remove 3rd party content posted on its web site, resulting in such website being "blocked" by several telecommunication companies in Australia and New Zealand, resulting in the users in such countries which regularly had been visiting such website or new first time users that would have likely sought in the future to visit the website being unable to connect to such website over the internet. These two countries consist of a large number and source of the company's audience and where such users reside. The suspension caused a harm to the company, both short term and long term, both physically and reputation wise, resulting in a loss of its audience and value by over 20% as of May 2019.

21

Case 1:20-cv-09869-GBD   Document 1-1   Filed 11/23/20   Page 23 of 29

LM, and Nizri were aware Plaintiff KYN intended to enter in such an arrangement because its referenced in the September 2018 agreement, KYN's CEO discussed it by phone and email with LM's CEO, and with WEE's CEO Defendant Nizri at the November 2018 New York City meeting. Defendants' actions interfered with Broadwebasia's contract causing Plaintiff KYN to breach the agreement or otherwise render performance impossible, causing Broadwebasia to suffer damages. Actions included fraudulent concealment and misrepresentation of legally permissible acquisition structures, causing Plaintiff KYN to pass on misrepresentations to the private placement investors and Broadwebasia. Defendants later reneged on the agreement for Defendant LM to be acquired by merger with Plaintiff KYN's Delaware acquisition subsidiary and rejected the offer to modify the merger even to a form which complied with Israeli law. Defendants overt actions tortuously interfered with Plaintiff KYN's Broadwebasia agreement by making the acquisition of Defendant LM through merger impossible before the Broadwebasia agreement's June 30, 2019 deadline impossible, causing Plaintiff KYN to be unable to perform on such agreement.

## SIXTH CAUSE OF ACTION

### Intentional Interference with Prospective Business Advantage

62. Plaintiff repeats and re-alleges every allegation set forth in previous paragraphs as if fully set forth herein.

63. An economic relationship existed between Plaintiffs and certain institutional investors which contained the probability of future economic benefit for Plaintiffs in the form of a $20,000,000 private placement financing. Defendants were aware of the existence of such aforementioned relationship no later then November 2018 when Plaintiff KYN at a New York City meeting disclosed to Defendant WEE information regarding the prospective lead institutional investor, a New York hedge fund, including showing Defendant Nizri the CEO's business card. Plaintiff at the same meeting, disclosed to Defendant Nizri that the hedge fund had reviewed the terms of the September 2018 acquisition agreement, and would make an investment subject to there being no material changes in the terms of such agreement.

22

Case 1:20-cv-09869-GBD   Document 1-1   Filed 11/23/20   Page 24 of 29

64. Defendants' fraudulent concealment over seven months that Defendant LM could not perform under the four agreements it executed and later refusing to proceed even if the agreements were modified to allow a merger to be completed with an Israeli subsidiary of Plaintiff were intentional acts disrupting Plaintiff KYN's relationship with the prospective private placement investors including the hedge fund.

65. Defendants interfered with Plaintiffs' prospective business relationship by misleading and inducing the Plaintiffs into making several misrepresentations to the private placement investors. First, the prospective private placement investors were informed that they should consider making an investment based on Plaintiff KYN's Delaware incorporated acquisition subsidiary completing a merger with Defendant LM. Later, Plaintiff KYN was forced to disclose to the prospective private placement investors that such previously agreed to by all parties structure their investment analysis was based on, was in fact not legal under Section 350 and 351 of Israeli Company Law. Later when Plaintiff KYN told the investors a legal method was available to complete the acquisition thru a merger by forming an Israeli acquisition subsidiary to merge with LM, the Defendants refused to proceed with such modified merger acquisition and the Plaintiff was forced to inform the investors that the Defendants were refusing to proceed with a legally viable acquisition by merger structure.

66. Plaintiff KYN was forced to disclose to the prospective investors that the only reason that existed why Defendants were refusing to proceed to close the acquisition thru a merger transaction was because it required the approval of an Israeli Court which would ensure Defendant LM had accounted for and disclosed all of its true existing liabilities to Plaintiff KYN. Once the prospective investors learned a viable and legal structure existed to complete an acquisition by way of a merger which didn't violate Israeli law, such investors were not willing to make an investment thru the new share purchase structure Defendant LM demanded in March 2019, because it made the transaction less desirable on an economic basis and further the investors believed Defendant LM was refusing to close the acquisition thru the previously

23

agreed merger structure because it wanted to avoid being forced by an Israeli Court to disclose its true liabilities in order to fraudulently convey undisclosed liabilities to Plaintiff KYN.

67.     Plaintiffs have suffered damages as a result of Defendants' actions which interfered with Plaintiffs prospective business advantages and are now entitled to recover these damages.

## SEVENTH CAUSE OF ACTION

### Unjust Enrichment

68.     Plaintiff repeats and re-alleges every allegation set forth in previous paragraphs as if fully set forth herein.

69.     Defendant LM benefited from its unlawful actions and unjustly enriched itself thru gaining a $125,000 promissory note which was a benefit provided by and that came at the expense of the Plaintiffs.

70.     Equity and good conscience require restitution from Defendant LM since they obtained the $125,000 promissory note thru wrongdoing or at the very least by mistake.

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests relief as follows:

On the First Cause of Action


A.      Economic damages in an amount to be proven at trial but in no case less than $64,500,000

B.      Specific Performance

C.      Non-economic damages in an amount to be proven at trial

D.      Pre- and Post-Judgment interest as allowed by law

E.      Costs and attorney fees incurred in bringing this suit.

F.      Rescission of the Promissory Note

24

    G.     Punitive Damages

    H.     Any further relief the Court deems just and proper

On the Second Cause of Action, compelling the Defendant to proceed with the Merger Agreement as set forth herein;

On the Third Cause of Action

    A.     Economic damages in an amount to be proven at trial but in no case less than $64,500,000

    B.     Specific Performance

    C.     Non-economic damages in an amount to be proven at trial

    D.     Pre- and Post-Judgment interest as allowed by law

    E.     Costs and attorney fees incurred in bringing this suit.

    F.     Rescission of the Promissory Note

    G.     Punitive Damages

    H.     Any further relief the Court deems just and proper

On the Fourth Cause of Action

    A.     Economic damages in an amount to be proven at trial but in no case less than $64,500,000

    B.     Specific Performance

    C.     Non-economic damages in an amount to be proven at trial

    D.     Pre- and Post-Judgment interest as allowed by law

    E.     Costs and attorney fees incurred in bringing this suit.

    F.     Rescission of the Promissory Note

    G.     Punitive Damages

    H.     Any further relief the Court deems just and proper

On the Fifth Cause of Action

    A.    Economic damages in an amount to be proven at trial but in no case less than $64,500,000

    B.    Specific Performance

    C.    Non-economic damages in an amount to be proven at trial

    D.    Pre- and Post-Judgment interest as allowed by law

    E.    Costs and attorney fees incurred in bringing this suit.

    F.    Rescission of the Promissory Note

    G.    Punitive Damages

    H.    Any further relief the Court deems just and proper


On the Sixth Cause of Action

    A.    Economic damages in an amount to be proven at trial but in no case less than $64,500,000

    B.    Specific Performance

    C.    Non-economic damages in an amount to be proven at trial

    D.    Pre- and Post-Judgment interest as allowed by law

    E.    Costs and attorney fees incurred in bringing this suit.

    F.    Rescission of the Promissory Note

    G.    Punitive Damages

    H.    Any further relief the Court deems just and proper


On the Seventh Cause of Action

    A.    Economic damages in an amount to be proven at trial but in no case less than $64,500,000

    B.    Specific Performance

    C.    Non-economic damages in an amount to be proven at trial

26

D.     Pre- and Post-Judgment interest as allowed by law

E.     Costs and attorney fees incurred in bringing this suit.

F.     Rescission of the Promissory Note

G.     Punitive Damages

H.     Any further relief the Court deems just and proper

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated: September 28, 2020

Davis & Associates P.C.
Attorneys for the Plaintiff

____//s//Jeffrey Davis_____

Jeffrey Davis, Esq.
600 Mamaroneck Ave, 4th Floor
Harrison NY 10528
(914) 586 3529
jeff@jeffdavisesq.com

27

## VERIFICATION

STATE OF NEW YORK     )

                          )    SS:

COUNTY OF NEW YORK   )

JEFFREY DAVIS ESQ. an attorney duly admitted to practice law before the Courts of the State of New York, affirms the following under penalties of perjury:

1. I am the principal of Davis & Associates P.C. the attorney of record for the Plaintiffs; I have read the foregoing Complaint and know the contents thereof; the same is true to my knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

2. The reason this Verification is made by me and not by said Plaintiffs is that the Plaintiff's offices and/or residences are outside of the county where your affirmant maintains his office.

3. The grounds of my belief as to all matters not stated upon my own knowledge are as follows: conversations with client, books and records of client.

Dated: Harrison, New York

       October 7, 2020

                                        _____//s//Jeffrey Davis_____

                                                   Jeffrey Davis

28