UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
KNOWYOURMEME.COM NETWORK, and
PALISADES CAPITAL, INC.,

      Plaintiffs,

 -against-

JACOB NIZRI, WE ENDEAVOR LTD, and
LITERALLY MEDIA LTD.,

      Defendants.

------------------------------------- x

MEMORANDUM DECISION AND
ORDER

20 Civ. 9869 (GBD)(JLC)

GEORGE B. DANIELS, United States District Judge:

  Plaintiffs initiated this action in New York State Supreme Court alleging breach of a letter of intent by Defendants. Defendants removed to this Court on the basis of diversity jurisdiction. Defendants subsequently moved to dismiss, arguing, in part, that this case belongs in Israel pursuant to a forum selection clause in the letter of intent.

  Before this Court is Magistrate Judge James L. Cott's August 30, 2021 Report and Recommendation (the "Report"), recommending that Defendants' motion to dismiss be granted. (Report, ECF No. 67, at 1–2, 43.) Magistrate Judge Cott advised the parties that failure to file timely objections to the Report would constitute a waiver of those objections on appeal. (*Id.* at 44.) After a request for an extension was granted, Plaintiff filed timely objections. (Pls.' Objs. to R. & R. ("Objs."), ECF No. 72.)

  Having reviewed Magistrate Judge Cott's Report, as well as Plaintiffs' objections, this Court ADOPTS the Report and overrules Plaintiffs' objections. Accordingly, Defendants' motion to dismiss is GRANTED.

1

## I. FACTUAL BACKGROUND[1]

In September 2018, the Chief Executive Officer of Liveleak, a non-party to this lawsuit that previously assigned all of its rights related to the letters of intent at issue in this action to Plaintiff Knowyourmeme.com Network ("KYM"), met with the Chief Executive Officer of Defendant Literally Media in New York City to discuss a potential merger between KYM and Literally Media. (Compl., ECF No. 1-1, ¶¶ 8, 10.) Liveleak subsequently drafted a letter of intent ("LOI") addressed to Literally Media, dated September 17, 2018. (*See* ECF No. 6-1.) The LOI noted that the parties' "current contemplation is that this transaction would be structured as a merger [] of an acquisition subsidiary of [Liveleak] with and into [Literally Media]." (*Id.* ¶ 1.) Most importantly, the LOI contained a forum selection clause which provided, in part, that "any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Letter may be brought . . . (ii) against [Literally Media Ltd.] (or any of its officers, directors, shareholders, and/or representatives) exclusively in the courts of the State of Israel . . . ." (*Id.* ¶ 10.)

After a meeting "on or about" November 15, 2018, in which Defendant Nizri (the Chairman of Literally Media) confirmed that Literally Media had no issues with closing the acquisition through a merger of KYM and Literally Media, the parties amended the letter of intent. (Compl. ¶¶ 11–12.) The parties continued their negotiations and due diligence and amended the LOI twice more. (*Id.* ¶¶ 13–16.)

On March 12, 2019, Literally Media informed Plaintiffs that it would not be able to complete a merger, but would instead need a share purchase agreement, because, as it later explained, "[u]nder Israeli law, an Israeli company cannot execute a merger with a Delaware

---

[1] The factual and procedural background is set forth in greater detail in the Report and is incorporated by reference herein.

2

entity." (*Id.* ¶ 17.) KYM then offered to form an Israeli entity to merge with Literally Media, which Literally Media rejected and insisted that the only way it would complete the acquisition would be through a "structure consisting of 'a purchase of the shares of' [Literally Media].'" (*Id.* ¶ 19.) Plaintiffs then sent Literally Media a demand notice of their intent to pursue legal recourse, but Literally Media did not respond. (*Id.* ¶ 20.) Plaintiffs then commenced this action in New York State Supreme Court, on October 7, 2020.

## II.    LEGAL STANDARD

### A. Reports and Recommendations.

A court "may accept, reject, or modify, in whole or in part, the findings or recommendations" set forth in a magistrate judge's report. 28 U.S.C. § 636(b)(1)(C). The court must review *de novo* the portions of a magistrate judge's report to which a party properly objects. *Id.* The court, however, need not conduct a *de novo* hearing on the matter. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). Rather, it is sufficient that the court "arrive at its own, independent conclusion" regarding those portions of the report to which objections are made. *Nelson v. Smith*, 618 F. Supp. 1186, 1189–90 (S.D.N.Y. 1985) (citation omitted).

Portions of a magistrate judge's report to which no or "merely perfunctory" objections are made are reviewed for clear error. *See Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) (citations omitted). The clear error standard also applies if a party's "objections are improper—because they are 'conclusory,' 'general,' or 'simply rehash or reiterate the original briefs to the magistrate judge.'" *Stone v. Comm'r of Soc. Sec.*, No. 17 Civ. 569 (RJS), 2018 WL 1581993, at *3 (S.D.N.Y. Mar. 27, 2018) (citation omitted). Clear error is present when "upon review of the entire record, [the court is] 'left with the definite and firm conviction that a mistake has been committed.'" *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citation omitted).

3

### III. REMOVAL WAS PROPER

Magistrate Judge Cott found that because diversity jurisdiction existed, removal was proper, and Plaintiffs' motion for remand should be denied. (Report at 23.) As Magistrate Judge Cott noted, Plaintiffs have provided no authenticated evidence demonstrating a lack of diversity between the parties. (Report at 19–20.) Conversely, Defendants' provided competent proof, via a sworn affidavit, showing that Defendant Literally Media's corporate citizenship and principal place of business are in Israel—thus, preserving diversity. (Report at 21.) Plaintiffs now object that the Report failed to consider if removal was defective because Defendants did not list Elia Media as a parent corporation in their Rule 7.1 corporate disclosure statement. (Objs. at 8–9.)

A defendant may remove any civil action commenced in state court if it might have been brought originally in federal court. 28 U.S.C. § 1441. Under the procedures for removal of civil actions laid out in 28 U.S.C. § 1446 a defendant must file, in the federal court for the district and division in which the state action is pending, a notice of removal, signed pursuant to Rule 11. 28 U.S.C. § 1446(a)-(d). A defendant must also file a "short and plain statement" of the grounds for removal, containing a representation that all defendants consent to the removal, giving written notice to all adverse parties, along with all papers from the state action. *Id.*

Federal Rule of Civil Procedure 7.1 requires that upon a party's first appearance, it must file a corporate disclosure statement that "identifies any parent corporation and any publicly held corporation owning 10% or more of its stock" or "states that there is no such corporation." Fed. R. Civ. P. 7.1. The Advisory Committee Notes make clear that the purpose of the rule is to reflect the "financial interest" standard of the Code of Conduct for United States Judges and assist judges in determining whether they may be disqualified because of "financial interest" in the case. Plaintiffs essentially ask this Court to expand the requirements for removal to include the disclosure

4

requirements of Rule 7.1. But Plaintiffs cite to no authority to support the proposition that a party's failure to file a Rule 7.1 statement makes removal defective and divests this Court of jurisdiction. Indeed, Rule 7.1 is a "procedural provision[], which do[es] not modify nor enlarge substantive rights or federal jurisdiction." *Ferro Corp. v. Cont'l Cas. Co.*, 2007 WL 120761, at *1 (N.D. Ohio 2007). Thus, Plaintiff's objections are overruled and removal was proper.

## IV.  THE FORUM SELECTION CLAUSE APPLIES TO PLAINTIFFS' CLAIMS

Plaintiffs' objection is that Magistrate Judge Cott interpreted the forum selection clause too broadly. (Objs. at 1–4.)

"[F]orum selection clauses are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances, or unless the forum selection clause was invalid for such reasons as fraud or overreaching." *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 720-21 (2d Cir. 2013) (alteration in original) (internal quotation marks and citations omitted); *see also Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 60 (2013) (stating that a forum-selection clause should "be given controlling weight in all but the most exceptional cases") (internal quotation marks omitted). "[T]he appropriate way to enforce a forum-selection clause pointing to a . . . foreign forum is through the doctrine of *forum non conveniens.*" *Atl. Marine Constr. Co.*, 571 U.S. at 60.

To determine whether a forum-selection clause warrants dismissal, courts in this Circuit apply a four-part test. The first three factors of the test ask: (1) "whether the clause was reasonably communicated to the party resisting enforcement," (2) "whether the clause is mandatory or permissive, *i.e.*, whether the parties are required to bring any dispute to the designated forum or simply permitted to do so," and (3) "whether the claims and parties involved in the suit are subject to the forum selection clause." *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014)

(citation omitted). If the forum selection clause meets these first three criteria, it is presumptively enforceable. *Id.* If a party seeks to overcome this presumption the court looks at a fourth factor which asks whether the resisting party has rebutted the presumption of enforceability by "making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* (citation omitted).

Here, the forum selection clause outlined in Section 10 of the September 17, 2018 LOI requires that:

> Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Letter may be brought . . . (ii) against [Literally Media Ltd.] (or any of its officers, directors, shareholders, and/or representatives) exclusively in the courts of the State of Israel, and each of the Parties consents to the jurisdiction of such courts (and of the appropriate appellate courts) in any such action or proceeding and waives any objection to venue as described herein.

*See* LOI, dated September 17, 2018, ECF No. 6-1.

Plaintiffs dispute the third factor and assert that their claims are not covered to the forum selection clause. (Objs. at 1–5.) In the context of forum selection clauses, the Second Circuit has stated that to "arise out of" means "to originate from a specified source." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 389 (2d Cir. 2007). Such language "generally indicates a causal connection." *Id.* While the words "arise out of" fall into a narrower class of forum selection clauses and do not "encompass[] all claims that have some possible relationship with the contract" the Court must, as Magistrate Judge Cott did, still "examine the substance of [the] claims, shorn of their labels" to determine the scope of the forum selection clause at issue. *Id.* at 388–390.

Plaintiffs do not explain why their claims for (1) fraudulent inducement or fraudulent misrepresentation, (2) negligent misrepresentation, (3) interference with contractual relationship, (4) intentional interference with prospective business advantage, and (5) unjust enrichment do not seek to enforce a provision of, or "arise out of," the LOI. In their opposition to the motion to

dismiss, Plaintiffs made the conclusory assertion, devoid of any case citation, that "the forum selection clause would *not* apply to the various tort claims asserted in the Complaint against" Defendants Nizri and We Endeavor.[2] (Pl.'s Opp'n, ECF No. 60, at 16)(emphasis in original.) In their objections to the Report, Plaintiffs simply state that their claims "do not" seek to enforce any provision of the LOI and are not based on any right "arising out of" the LOI. (Objs. at 3.) Plaintiffs' objections amount to a less than permeating syllogism: Because the forum selection clause contains the phrase "arising out of" it is narrow and because the clause is narrow it must not apply to Plaintiff's claims. Plaintiffs are incorrect for two reasons.

First, the Second Circuit has clearly stated that a "contractually-based forum selection clause also covers tort claims . . . if the tort claims ultimately depend on the existence of a contractual relationship between the signatory parties." *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 724 (2d Cir. 2013) (internal quotations omitted.) Plaintiffs' counsel seeks to distinguish *Magi* by arguing that the forum selection clause at issue in *Magi* was broader than the clause at issue in this case. Plaintiffs argue that because the Second Circuit stated in *Phillips* that courts in this district must look to the specific language of the forum selection clause at issue, and "discount[] the precedential weight of cases that deal with dissimilarly worded clauses," this Court should disregard the "sweeping statements" made in *Magi*. *Phillips*, 494 F.3d at 390; *see*

---

[2] To the extent Plaintiffs argue that the forum selection clause only applies to Literally Media as the signatory of the LOI, this argument fails. "[A] contractually-based forum selection clause also covers tort claims against non-signatories" and "a non-signatory to a contract containing a forum selection clause may enforce the forum selection clause against a signatory where the non-signatory is 'closely related' to another signatory." *Magi XXI, Inc., v. Stato della Citta del Vaticano*, 714 F.3d 714, 724 (2d Cir. 2013). Here, the plain language of the clause makes clear that it extends to claims against any of Literally Media's "officers, directors, shareholders, and/or representatives." (*See* LOI ¶ 10.) Clearly, Defendant Nizri, as Chairman of Literally Media, is covered by the forum selection clause. (Nizri Aff. ECF No. 6, ¶ 2.) Moreover, Defendants have demonstrated via Nizri's affidavit that We Endeavor is not a proper defendant as it is a trade name used by Defendant Nizri and not a corporate entity. (*Id.* ¶ 5.) In any event, as Magistrate Judge Cott found, even if We Endeavor Ltd. is an entity, the Complaint alleges that it was acting as a representative of Literally Media. (Report at 30; Compl. ¶ 11.) Thus, We Endeavor would also be covered by the plain language of the forum selection clause.

*also* Objs. at 3. But what Plaintiffs' counsel characterizes as a "sweeping statement" regarding the applicability of forum selection clauses to tort claims, is more aptly described as a rule promulgated by the Second Circuit that is binding on the courts of this Circuit. Surely, when the Second Circuit adopted the "language-specific" inquiry rule in *Phillips* it did not mean to render every statement—including their own announcements of general rules of law—completely weightless because of factual differences between cases. While, in this context, drawing an analogy to another case is only useful to the extent those other cases address contract language that is substantially similar, neither Magistrate Judge Cott, nor this Court, rely on *Magi* by analogy. Instead, *Magi* is cited for its rule that contractually-based forum selection clauses can apply to claims that sound in tort.

Second, despite being of a narrower class of forum selection clauses, Plaintiffs' claims are covered by the forum selection clause in the LOI. Plaintiffs' fraudulent inducement claim grows out of the contractual relationship between the parties. To be sure, Plaintiff alleges in the Complaint that "Defendants . . . know the representations they were making *in each such agreement*[] were false." (Compl. ¶ 46) (emphasis added.) Thus, resolution of Plaintiff's fraudulent inducement claim requires an interpretation of their rights under the LOI. (Report 27–28); *see, e.g., Bent v. Zounds Hearing Franchising, LLC*, 2015 WL 7721838, at *6 (S.D.N.Y. Nov. 30, 2015) (fraudulent inducement claim fell under forum selection clause because it "implicate[d]" the parties' "business relationship" and the "rights" and "obligations under the agreements"); *see also Montoya v. Cousins Chanos Casino*, 2012 WL 118475, at *5 (N.Y. Sup. Ct. 2012) ("[fraud-based causes of action] grow out of the contractual relationship between the parties and require interpretation of the contract for resolution").

8

Similarly, Plaintiffs' negligent misrepresentation claim also arises out of the LOI. Plaintiffs' Complaint alleges that "Defendants should have know [Literally Media] made representations *in all four agreements* which were false and incorrect." (Compl. ¶ 55) (emphasis added.) Thus, Plaintiffs' negligent misrepresentation claim requires interpretation of the LOI to determine if there is an enforceable agreement and whether the Defendants' alleged misrepresentations implicate rights arising out of the LOI. Magistrate Judge Cott correctly relied upon cases in which the forum selection clauses at issue contained "arising from" language and were found to encompass a negligent misrepresentation claim. *See Jones v. Ponant USA LLC*, 2020 WL 2489076, at *7 (S.D.N.Y. May 14, 2020); *see also BMW of N. Am. LLC v. M/V Courage*, 254 F.Supp. 3d 591, 597–98 (S.D.N.Y. 2017) (concluding that forum-selection clause governing " '[a]ny dispute arising under this [Bill of Lading]' " included tort claims); *Cfirstclass Corp. v. Silverjet PLC*, 560 F.Supp. 2d 324, 329–30 (S.D.N.Y. June 11, 2008) (finding the same for clause governing "all disputes arising hereunder"); *Brennen v. Phyto-Riker Pharm., Ltd.*, 2002 WL 1349742, at *4–5 (S.D.N.Y. June 20, 2002) (holding the same for clause governing any action "arising out of or relating to this Agreement").

Finally, Plaintiffs remaining claims for interference with contractual relationship, intentional interference with prospective business advantage, and unjust enrichment each arise out of the LOI and depend on the existence of a contractual relationship between the parties. Magistrate Judge Cott correctly found that these causes of action implicate the plain terms of the LOI and arise from it. (Report at 29.) Plaintiff has provided no arguments to the contrary. Accordingly, Magistrate Judge Cott properly applied the forum selection clause to Plaintiffs' claims.[3]

---

[3] Because this Court has found that removal was proper and that the forum selection clause applies to all of Plaintiffs' claims, Plaintiffs' remaining objections are dismissed as moot.

9

## V. CONCLUSION

Magistrate Judge Cott's Report is ADOPTED. Defendant's motion to dismiss under the doctrine of *forum non conveniens*, (ECF No. 5), is GRANTED. Defendants' motion to dismiss for failure to prosecute, (ECF No. 55), is DENIED as moot. Plaintiffs' motion to remand, (ECF No. 11), is DENIED. Plaintiffs' motion to amend the complaint to add non-diverse parties, and motion for leave to submit a sur-reply, (ECF Nos. 62, 63), are DENIED. The Clerk of the Court is directed to close the motion and this case accordingly.

Dated: September 28, 2021
     New York, New York

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge